UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ANTONIO SIMMONS, D-9,

    Defendant.

_____/

Case No. 11-cr-20699

Honorable Nancy G. Edmunds

**ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE [537]**

Before the Court is Defendant Antonio Simmons's motion to reduce his sentence to time served, filed under the authority of the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A)(i), as amended by § 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239. Defendant filed a motion with a brief in support (ECF No. 537), two letters supplementing his motion (ECF No. 540, 546), a reply brief (ECF No. 543), and a number of exhibits filed under seal. His motion and supplements thoroughly explain his request for compassionate release based upon his underlying health conditions coupled with the increased threat of infection with COVID-19 in the congregate confinement of a prison setting. The Government filed a response in opposition to the motion (ECF No. 539) and a notice of supplemental authority (ECF No. 547.) The Court has reviewed the record in its entirety and finds that a hearing is not necessary. For the reasons set forth below, the Court grants Defendant's motion.

I.    **Background**

Like so many defendants who appear before this court, Defendant began his life amid troubling circumstances. His parents and stepparents were addicted to drugs and

1

used and sold drugs in front of their child. By age ten, Defendant began drinking alcohol and he was smoking marijuana daily by age eleven. (ECF No. 366.)

He has since racked up a significant criminal history. His past convictions include obstructing police (1991), carrying a concealed weapon (1993 and 2004), fleeing from police (2002), felon in possession of a weapon (2004), operating while impaired (2006) and operating without a license (2008), domestic violence (2006) and possession of marijuana (2006 and 2008). (ECF No. 298.) Defendant was given probation for most of these convictions although he spent a year in jail, twice, for felon in possession in 2004 and possession of marijuana in 2008. In 2010, he was convicted of unlawful use of a communication facility to the facilitate the commission of a Controlled Substance Act violation. He was on federal supervised release for this conviction when he committed the acts which led to his present conviction. (ECF No. 539.)

According to the Government, Defendant was involved in a major drug operation between the years of 2008 and 2012. A criminal complaint was filed and on February 29, 2012, Defendant was indicted along with 17 others for conspiracy to possess with the intent to distribute, and distribution of, cocaine and marijuana in violation of 21 U.S.C. §§ 846, 841(a), and 841(b)(1)(A).[1] (ECF No. 15.) On October 8, 2013, he pleaded guilty to the charge against him and admitted to receiving and redistributing over 150 kilograms of cocaine. (ECF No. 298.) This Court sentenced him to 204 months imprisonment, but that term was later changed to 188 months after the passage of an amendment that retroactively lowered Defendant's guideline sentencing range. (ECF No. 483.)

---

[1] A second superseding indictment increased the total number of co-defendants and the number of counts charged, but the charges against Defendant did not change. (ECF No. 121.)

2

Defendant began serving his current sentence on June 3, 2014, receiving credit for his pretrial detention. He has presently served over 75% of his statutory sentence and his projected release date is July 6, 2024. (ECF No. 539 at 5, 540.) Thus far during Defendant's more than nine years of incarceration, he has made many accomplishments. He earned his GED and completed numerous programs to address his problems with drugs and alcohol as well as educational programs and a course on financial responsibility. He has not received any disciplinary infractions. (ECF No. 540, 543 at 6.) And, on January 30, 2020, the Bureau of Prisons determined Defendant is eligible for the First Step Act and that he presents a low risk of recidivism. (ECF No. 543-2.) He is currently being held at Ashland FCI, a low-security federal prison camp that allows inmates to leave the facility five days a week to work outside the prison. (ECF No. 543 at 6.)

Defendant, now 48 years old, moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). As the basis for his motion, he complains of underlying health conditions that place him at greater risk for severe illness from COVID-19 coupled with the increased threat of infection while he remains in prison. His medical records show his current conditions include hypertension, Type 2 diabetes, and a "baseball size" right inguinal hernia for which he requires surgery. (ECF No. 545-1 at PageID 3375, 3377, 3383.) As of this writing, the Bureau of Prisons reports five positive cases of COVID-19 and over 400 recoveries among inmates and staff at Ashland FCI. Six inmates have also died from the virus at this facility. *See COVID-19 Cases*, Federal Bureau of Prisons (last updated Feb. 24, 2021), https://perma.cc/GJ3J-JWAX. Defendant asks the Court to

reduce his sentence to time served so that he may better protect himself from contracting COVID-19.

II.     **Analysis**

The "compassionate release" provision of 18 U.S.C. § 3582 allows district courts to reduce the sentences of incarcerated persons when there are "extraordinary and compelling" reasons to do so. *United States v. Jones*, 980 F.3d 1098, 1100 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)). Historically, only the Director of the Bureau of Prisons could bring such a motion, but this changed with the passage of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239. *United States v. Ruffin*, 978 F.3d 1000, 1003 (6th Cir. 2020). An inmate may now bring a compassionate release motion on his own behalf once he exhausts any administrative remedies or 30 days after requesting relief from the Bureau of Prisons. *Id.* at 1004 (citing *United States v. Alam*, 960 F.3d 831, 833-35 (6th Cir. 2020)).

The Sixth Circuit has instructed district courts to engage in a three-step analysis when considering a compassionate-release motion: *First*, consider whether "extraordinary and compelling reasons warrant [a sentence] reduction." *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021) (quoting *Jones*, 980 F.3d at 1101). *Second*, "ensure that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id. Third*, "consider all relevant sentencing factors listed in 18 U.S.C. § 3553(a)." *Id.* "If each of those requirements are met, the district court 'may reduce the term of imprisonment,' but need not do so." *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

4

The policy statement referenced in step two is found in U.S.S.G. § 1B1.13 and presently only applies to motions brought by the Bureau of Prisons, not to inmate-filed motions. *Elias*, 984 F.3d at 519. Thus, when considering inmate-filed motions for compassionate release, "district courts have full discretion" to determine what reasons are "extraordinary and compelling." *Jones*, 980 F.3d at 1111.

### A.  Exhaustion of Administrative Remedies

Defendant properly exhausted his administrative remedies by submitting a request for release to the warden at Ashland FCI and waiting until that request was denied before filing the present motion. Accordingly, that threshold requirement for relief has been satisfied. (ECF No. 537-1,  539 at 11.)

### B.  Extraordinary and Compelling Reasons

The Government disputes that Defendant's hypertension amounts to "extraordinary and compelling reasons" for his release, but overlooks completely Defendant's diagnosis of Type 2 diabetes mellitus,[2] a condition which the Centers for Disease Control ("CDC") states places an individual at an increased risk of severe illness from the virus that causes COVID-19.  *See People with Certain Medical Conditions,* Centers for Disease Control and Prevention (last updated Feb. 22, 2021), https://perma.cc/9GVQ-P3GD. *See also Elias*, 984 F.3d at 521 ("Relying on official guidelines from the CDC is a common practice in assessing compassionate-release motions."). Indeed, the Government even lists Type 2 diabetes among the factors that place individuals "actually at risk" in its response. (ECF No. 539 at 15.) Additionally, the CDC states hypertension "might" place Defendant at an increased risk of severe illness

---

[2] *See* ECF 545-1 at PageID.3375.

5

or death from the virus. *See People with Certain Medical Conditions,* supra. The Court therefore finds extraordinary and compelling reasons exist and compassionate release is permissible pending an analysis of the 18 U.S.C. § 3553(a) sentencing factors.

### C. Section 3553(a) Sentencing Factors

The Government argues Defendant is a danger to the community and that his request for early release should be denied based upon a consideration of the 18 U.S.C. § 3553(a) factors. As at sentencing, the 18 U.S.C. § 3553(a) factors require consideration of a defendant's history and characteristics, the nature and circumstances of the offense, the seriousness of the offense, the need to protect the public from further crimes of the defendant, the need to promote respect for the law, and the need to provide just punishment to Defendant and adequate deterrence to others. *See* 18 U.S.C. § 3553(a).[3] "District courts should consider all relevant § 3553(a) factors before rendering a compassionate release decision . . . [b]ut 'as long as the record *as a whole* demonstrates that the pertinent factors were taken into account by the district court[,]' a district judge need not 'specifically articulate' its analysis of every single § 3553(a) factor." *Jones*, 980 F.3d at 1114 (emphasis in the original) (quoting *Gall v. United States*, 552 U.S. 38, 49-50 (2007); *United States v. Curry*, 606 F.3d 323, 330 (6th Cir. 2010)).

According to the Government, Defendant's motion should be denied because of Defendant's lengthy criminal history, the amount of drugs involved in his drug conspiracy,

---

[3] Wrapped up in this analysis is also the Government's argument, based upon the now irrelevant U.S.S.G. § 1B1.13, that releasing Defendant would endanger the community. *See Jones*, 980 F.3d at 1109 ("Until the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion."). While a defendant is no longer required to prove "lack of dangerousness" to succeed on a § 3582(c)(1)(A) motion, the effect his early release would have on the safety of any other person or the community is incorporated into several § 3553(a) factors.

6

the regularity with which Defendant received and distributed shipments of drugs, and the fact that Defendant committed the present offense while on supervised release for his prior conviction.[4] It argues Defendant's early release would put the community at risk and would not likely decrease Defendant's chances of coming into contact with the virus because he is unlikely to practice social distancing or wear a mask in public places. (ECF No. 539.) Defendant disputes these arguments by pointing out it is impossible to social distance in prison. He states he would self-isolate in his home, wear a mask when necessary, and follow his primary care physician's instructions if he were granted early release. Furthermore, he argues he is at an increased risk of contracting COVID-19 at Ashland FCI because inmates and staff at this facility frequently do not wear the masks they are issued and are able to leave and return to the facility without being tested or questioned regarding potential exposure to COVID-19. (ECF No. 543 at 4, 540.) In his letters to the Court, he takes responsibility for his actions, acknowledges his crimes were serious, and states he has "no desire to ever return to any form of illegal activity." (ECF No. 540, 546.) He also expresses regret for disappointing his family and damaging the community that has been good to his children. (ECF No. 546.)

Defendant's medical records demonstrate his attention to his health and suggest he would abide by society's new social norms such as mask-wearing and social distancing. Moreover, Defendant's statements are persuasive when coupled with the overwhelming evidence of his commitment to better himself while in prison. During his nine year imprisonment, he has earned his GED and completed at least three separate drug treatment courses, a financial responsibility course and over seventeen educational

---

[4] The Government's argument that Defendant knowingly involved certain family members in his illegal activity is disputed and not supported by the record.

courses. He has not received any disciplinary infractions and has maintained close contact with his wife and sons, with whom he plans to reside upon release. (ECF No. 540, 543 at 6.) He is eligible for a pension from his prior place of employment and disability benefits due to a motor vehicle accident that left him with a prosthetic leg. (ECF No. 546.) Given this information, and the Bureau of Prison's own determination that Defendant is eligible for the First Step Act and at low risk of recidivism, the Court finds Defendant is not likely to be a danger to his community or return to illegal activities if released.

The other § 3553(a) sentencing factors, as a whole, also favor release. Defendant's history and characteristics, not only before his conviction but in the nine years since, weigh in favor of granting his motion. His crimes were serious, he does not dispute this, but he has shown a willingness to better himself and not make the same mistakes in the future. And, especially in the context of this pandemic and prison-related lockdowns, the more than nine years Defendant has spent in prison satisfy the need to promote respect for the law, provide just punishment to Defendant, and deter others from engaging in similar crimes. Accordingly, the Court finds compassionate release is appropriate.

### III.  Conclusion

The Government does not dispute that Defendant has exhausted his administrative remedies. He also has established "extraordinary and compelling" reasons for compassionate release within the meaning of 18 U.S.C. § 3582(c)(1)(A)(i). An analysis of the 18 U.S.C. § 3553 factors also indicates early release is permissible. For these reasons, Defendant's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is GRANTED.

Accordingly,

IT IS ORDERED that Defendant's Motion for Compassionate Release (ECF No. 537) is GRANTED;

IT IS FURTHER ORDERED that Defendant's sentence of imprisonment is reduced to time served;

IT IS FURTHER ORDERED that, immediately upon release, Defendant shall commence a new term of supervised release of 60 months;

IT IS FURTHER ORDERED that, unless Defendant has been in a segregated special unit for high-risk prisoners for more than 14 days where no inmate has tested positive or shown symptoms of COVID-19 within the past 14 days, he shall self-quarantine within his home for the first 14 days immediately following his release;

IT IS FURTHER ORDERED that Defendant shall serve the first 12 months of supervised release under home detention and shall not leave his residence other than for medical appointments or other specific reasons detailed in the forthcoming amended judgement;

IT IS FURTHER ORDERED that Defendant's final 48 months of supervised release shall be served according to the conditions imposed by the Court in its original judgment with additional terms to be considered in the Court's discretion and in consultation with the Probation Department;

Defendant's original sentence remains unchanged in all other respects.

SO ORDERED.

Dated: February 25, 2021

s/ Nancy G. Edmunds
Nancy G. Edmunds
United States District Court Judge

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 25, 2021, by electronic and/or ordinary mail.

        s/ Lisa Bartlett
        Case Manager